**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Heraclio Osorio-Arellanes,<br><br>Defendant. | No. CR-11-00150-004-TUC-DCB (BPV)<br><br>**ORDER** |

The trial for Defendant, Heraclio Osorio-Arellanes, is set for February 5, 2019. He filed three pretrial motions: Motion to Suppress Statements and Evidence for Fifth Amendment Violation (Doc. 762), Motion to Suppress Statements and Evidence for Sixth Amendment Violation (Doc. 763), and Motion to Preclude Videotape Deposition of Rito Osorio-Arellanes (Doc. 764).

The Government agrees it will not use the March 21, 2018, videotaped deposition of codefendant Rito Osororio-Arellanes.

The two motions to suppress are aimed at precluding incriminating statements made by the Defendant during an interrogation by the United States prosecutor and FBI investigators conducted in Mexico.

Heraclio relies on *Miranda v. Arizona,* 384 U.S. 436 (1966). Custodial interrogation generates inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he might not otherwise do so. *Id.* at 467. Under *Miranda* there are specific prophylactic safeguards designed to protect a suspect's Fifth

Amendment right against self-incrimination: he must be warned of his right to remain silent; that anything he says can be used against him in a court of law; he has the right to the presence of an attorney, and if he cannot afford one, an attorney will be appointed for him prior to any questioning. *Id.* at 479.

The Sixth Amendment right to counsel attaches when a suspect has been formally charged and the prosecution is at a critical stage. *Kirby v. Illinois,* 406 U.S. 682, 688-89 (1972). Statements that are deliberately elicited by law enforcement from a defendant absent counsel after formal proceedings are commenced are inadmissible. *United States v. Henry,* 447 U.S. 264, 270-71, 274 (1980). A critical stage may be any pretrial proceeding that is the part of the whole course of a criminal proceeding and at which a defendant cannot be presumed to make critical decisions without counsel's advice. *Lafler v. Cooper* 566 U.S. 156 (2012).

The Defendant argues that incriminating statements elicited during an interrogation conducted in Mexico by FBI agents violated his Fifth and Sixth Amendment rights. The relevant facts are as follows. Defendant was indicted on August 24, 2011. Extradition proceedings were initiated, including issuance of a Provisional Arrest Warrant. He was arrested by Mexican authorities on April 12, 2017. On July 27, 2017, while in custody in Mexico, the Defendant was visited by FBI agents and Assistant United States Attorney Todd Robinson for the purpose of interviewing the Defendant.

The interview was conducted by FBI Agent Dreher; the AUSA did not actively participate in questioning Heraclio. The interview was arranged and also attended by the Mexican Procuraduria General de la Republica (PGR; Mexican Attorney Generals).

"Upon arriving at the prison, the agents were informed that Heraclio was aware of the proposed interview and had requested that his attorney be present." (Response (Doc. 772) at 4.) They waited for his attorney. After waiting several hours and Defendant's attorney failed to arrive, one of the PGR representatives suggested that a prison attorney might represent him during the interview. He declined. Agent Dreher suggested that Heraclio meet the prison lawyer and then he could decide if he felt comfortable having that

attorney represent him. Heraclio again stated "he wanted to have his own lawyer present." (Response (Doc. 772), Dreher Notes 8/10/17 (Doc. 772-1) at 6.[1]) Agents continued to wait until approximately 1:20 p.m., when Juan Salvador Pimentel Ramirez (Pimentel) arrived. He spoke with the United States contingency and spoke privately with the Defendant.

At the evidentiary hearing Agent Dreher could not remember what Pimentel said during his initial conversation with Pimentel but testified that he believed Pimentel was Heraclio's long-awaited attorney. This assertion is somewhat undermined by the interview transcript where Pimentel clearly states that he is not representing Heraclio in the criminal proceeding, and states that the attorney of record in the extradition file is Jonathan Toledo. (Heraclio Interview (Doc. 772-4) at 4.) Defendant argues that the Government should, therefore, have known that Pimentel was not Defendant's attorney and that Jonathan Toledo was counsel of record. At best, Defendant establishes that he hired Toledo to represent him in the extradition proceeding.

Defendant asserts, without introducing any supporting evidence, that he did not know and had not previously met with Pimentel, and he does not know how and why Pimentel arrived at the prison because he did not call him. (Motions (Docs. 762, 763) ¶ 13.) This assertion is contradicted by the record which reflects as noted above that twice the Defendant refused to accept any representation other than his attorney, and did not make any similar objection to being represented by Pimentel.

After Heraclio had spoken with Pimentel alone for approximately 10 minutes, (Dreher Notes 8/10/17 (Doc. 772-1) at 7), Agent Dreher told Heraclio that it was a good thing he had an attorney and he read Heraclio his rights, as follows: "First of all, [] you have the right to remain silent. Even if you've already spoken to other people, you don't have to talk to us at this time. Anything you say can be used against you in a court of law. You have the right to speak with an attorney, so he can advise you before we ask you any questions. You have the right to have an attorney present during questioning. If you don't have, [] the means to pay for an attorney, you have the right to have one assigned to you

---

[1] Page numbers are CM/ECF pagination.

before questioning, if you so desire. *However, our ability to provide you with an attorney at this time may be limited by decisions taken by local authorities or by the availability of an attorney who can practice in the United States of America.* If you decide to answer our questions at this time, without an attorney present, you have the right to stop answering at any time." (Heraclio Interview (Doc. 772-4) at 8-9.)

Agents asked if there were any questions. Pimentel asked: "Is this just the part pertaining to the United States Department of Justice or is it just the, what's it called? The part having to do with the police investigation of, of what this investigation is about?" In answer, Agents told Pimentel - they were all working together, and asked one last time: "Okay. We'll start. Okay. So, can we ask you a few questions? Heraclio responded yes and questioning began. *Id.* at 9-10. Heraclio made numerous incriminating statements without any objection from Pimentel. At one point, Pimentel inquired as to whether in the United States, like in Mexico, you can negotiate so that some of Heraclio's testimony might work to benefit him; "What is the possibility of Heraclio receiving some benefit that the American justice system could offer him?" *Id.* at 76. Agent Dreher responded, "That happens much later, after he's extradited. He'll have the right to an attorney there, and that's when that entire process begins." *Id.*

At the conclusion of the interview, Mexican government officials took photographs, fingerprints and a DNA sample. They prepared a Spanish language Proceeding Record which described the interview process, and which Heraclio signed acknowledging he was accompanied by his private attorney, Juan Salvador Pimentel Ramirez, and that he had "voluntarily accede[d] to the [] interview and grant[ed] his consent for the fingerprints and DNA samples." (Response (Doc. 772) at 6.)

<u>The Fifth Amendment Right to Counsel</u>

The Fifth Amendment privilege against self-incrimination applies when U.S. agents question a suspect in a foreign country. *In re Terrorist Bombings of U.S. Embassies in East Africa,* 552 F.3d at 198-201.[2] The Defendant challenges the *Miranda* notice given

---

[2] Without regard to the "origin—i.e., domestic or foreign—of a statement, it cannot be admitted at trial in the United States if the statement was 'compelled.' . . . Similarly, it

- 4 -

here because it first informed Heraclio that he had a right to counsel but then in the next sentence "inform[ed] him that he may not have such counsel appointed because of decisions by local authorities or the availability of a qualified attorney from the United States." (Motions (Docs. 762, 763 ¶¶44.) *Miranda* has, however, been applied flexibly to overseas interrogations by United States agents to accommodate the exigencies of local conditions. *Id.* at 205. A *Miranda* warning given in an international notification of rights must inform a suspect of his right to remain silent and the right to have counsel present during questioning—but it should state that appointment of counsel cannot be effectuated by the United States in a foreign country and whether the suspect can retain a lawyer or have a lawyer appointed to be present during the questioning are matters that depend on local law. It is not the responsibility of United States agents to research, understand, explain the local law, or secure counsel for a suspect in a foreign country. *Id.* at 207-209.

Here, the Defendant was informed that he had the right to remain silent and he had the right to an attorney before and during questioning and if he was unable to pay for a private attorney one would be assigned to him, but the ability to provide such an attorney might be limited by local authorities or by the availability of an attorney who can practice in the United States of America. The international *Miranda* notice given in this case was similar to the notice approved in *In re Terrorist Bombings of U.S. Embassies in East Africa,* as being a factually accurate statement of defendant's right to counsel under the Fifth Amendment, and an explanation that the effectuation of that right might be limited by the strictures of criminal procedure of a foreign land, *id.* at 206, citing *Cranford v. Rodriguez,* 512 F.2d 860 (10th Cir. 1975) (approving notice offering opportunity to consult the American Consulate). *Miranda* does not require that attorneys be producible on call, but only that a suspect be informed that they have a right to an attorney before and during questioning. *Id.* at 207. The court explained that the Supreme Court approved a warning linking an indigent's right to counsel before interrogation with a future event—"when you

---

does not matter whether the defendant is a U.S. citizen or a foreign national: 'no person' tried in the civilian courts of the United States can be compelled 'to be a witness against himself.'" *In re Terrorist Bombings of U.S. Embassies in East Africa,* 552 F.3d at 199 (quoting U.S. Const. amend. V.)

- 5 -

go to court." *Id*. (citing *Duckworth v. Eagan*, 492 U.S. 195, 198 (1989). In other words, a suspect can forego questioning until he is in the United States where counsel can be appointed for him or he can obtain whatever assistance is available in the foreign land limited by the laws of that jurisdiction.

By his own admission, Heraclio understood this right and did not agree to questioning by agents without having his lawyer present. (Motions (Docs. 762, 763 ¶¶45.) He did not waive his right to counsel. The waiver portion of the *Miranda* notice was not read to him, and he did not sign a waiver. To the contrary, Heraclio expressly invoked his right to an attorney.

The test for determining the voluntariness of a suspect's confession is whether, under the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by inducement, such that the suspect's will was overcome." *United States v. Coutchavlis*, 260 F.3d 1149, 1158 (9th Cir.2001); *Haynes v. Washington*, 373 U.S. 503, 513–14, (1963). The Court considers whether the incriminating statements made by the Defendant were made voluntary in the sense that they were "the product of a free and deliberate choice rather than intimidation, coercion or deception," *Colorado v. Connelly,* 479 U.S. 157, 170 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)), "or some other police overreaching," *id., see also Fare v. Michael C.,* 442 U.S. 707, 726–727 (1979) (defendant was "not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit. . .).

After hearing testimony at the evidentiary hearing, the Court finds that there was no police coercion; the length of the interrogation, its location, and its continuity was reasonably limited to about an hour and a half. The interrogation tactics were not overbearing. Agents advised Heraclio of his right to remain silent or answer questions with the advice of counsel, and there were no direct or implied promises of any benefit. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir.2003)). The Defendant is a middle-aged adult, and he did not assert any educational deficiencies which would suggest his will could be easily overwhelmed. Instead, the evidence reflects that he understood his right to remain

silent or to have an attorney present and answer questions. In fact, he twice invoked his right to counsel and refused to answer questions without an attorney present, but then he agreed to and did answer questions after speaking to Pimentel and with Pimentel present during the questioning.

The burden is on the Government to prove voluntariness by a preponderance of the evidence. *Id.* (citing *United States v. Leon Guerrero*, 847 F.2d 1363, 1365 (9th Cir. 1988). Administration of the prophylactic *Miranda* notice is a significant factor in the totality of the circumstances analysis, which while it does not render moot the voluntariness inquiry, *id.*, (citing *Dickerson v. United States*, 530 U.S. 428, 433–34 (2000), it does press the Defendant to articulate some factual allegation sufficient to challenge the propriety of the *Miranda* warning, (Response (Doc. 136) at 3 (citing *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000); *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990)).

There is no evidence before this Court that either the United States officials or the PGR Mexican Attorney Generals produced Pimentel instead of Toledo or even that Heraclio actually sought representation from Toledo for purposes of the July 27, 2017 interview. The Court notes such evidence would be readily available by way of affidavits from either of the two Mexican attorneys.[3]

"[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *In re Terrorist Bombings of U.S. Embassies in East Africa,* 552 F.3d at 212 (quoting *Dickerson*, 530 U.S. at 444)) (emphasis added). The Government has shown there was no coercion and no trickery involved in Defendant's decision to answer questions represented by Pimentel. The Court finds that there was no violation of Heraclio's Fifth Amendment right to remain silent or be advised by counsel during questioning.

---

[3] Here, the Court assumes for the purpose of these motions that the joint venture doctrine would apply because the United States law enforcement agents actively participated in questioning Heraclio and foreign officials acted as agents for purposes of facilitating the questioning. *In re Terrorist Bombings of U.S. Embassies in East Africa,* 552 F.3d at 203.

Sixth Amendment Right to Counsel

"As a general matter . . . an accused who is admonished with the warnings prescribed by . . . *Miranda* has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." *Paterson v. Illinois,* 487 U.S. 285, 296 (1988). This is so in spite of differing interests protected by the two amendments. The Fifth Amendment guards against self-incrimination; the Sixth Amendment protects a person's "right to have assistance of counsel for his defense." *United States v. Fellers,* 397 F.3d 1090, 1095-97 (8th Cir. 2005). The Sixth Amendment right to counsel commences upon indictment and guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings. "Interrogation by the State is such a stage." *Montejo v. Louisiana,* 555 U.S. 778, 786 (2009) (quoting *Massiah v. United States,* 337 U.S. 201, 204-205 (1964)). The *Miranda* notice covers both, and therefore its administration by agents prior to questioning precludes any violation of both. Whether *Miranda* was given answers the Sixth Amendment in all but the rarest of cases. This may be such a case.

Here, the unique foreign location of the post-indictment interrogation makes the differences between the Fifth and Sixth Amendment protections afforded by *Miranda* important. The Sixth Amendment right protects unaided laymen in critical confrontations with the government after initiation of an adversary process with respect to a particular crime, whereas the Fifth Amendment protects a suspect's desire to deal with police only through counsel. The former is offense specific the latter is not. *McNeil v. Wisconsin,* 501 U.S. 171, 177-178 (1991). The Fifth Amendment right to counsel can be protected by the flexible *Miranda* notice given in this case, but the Sixth Amendment cannot.

Here, it is undisputed that the Sixth Amendment right to counsel attached when Heraclio was indicted. Government agents sought to interrogate him post-indictment, a critical confrontational stage in this criminal proceeding. Heraclio expressly invoked his right to counsel, which under the Sixth Amendment was the right to be aided in his defense. Regardless of what FBI agents knew when they arrived for the interrogation, at the

inception of the interrogation Pimentel admitted he had no knowledge about this case or the related extradition proceeding. He told agents that Jonathan Toledo was representing Heraclio in the extradition proceeding. After reviewing the transcript of the interrogation, the Court finds that Pimentel was equally ignorant regarding criminal law and the criminal justice system in the United States. The Court finds as a matter of fact that Pimentel was not capable of protecting Heraclio's Sixth Amendment right to counsel to assist him in his defense in this case.

Importantly, once Heraclio invoked his constitutional right to counsel, the analysis changed markedly. *See McNeil v. Wisconsin,* 501 U.S. 171, 173 (1991) (once the Sixth Amendment right to counsel attaches and is invoked, any subsequent waiver during a police-initiated custodial interview is ineffective) In *Montejo v. Louisiana,* 566 U.S. 778, 797 (2009), the Supreme Court overruled a blanket Sixth Amendment bright-line rule issued in *Michigan v. Jackson*, 475 U.S. 625, 780 (1986), precluding, after arraignment, any government efforts to elicit information from uncounseled defendants. Instead, the Supreme Court found a Sixth Amendment waiver can be made but if a defendant can show he clearly asserted his right to counsel, -- then no interrogation should have taken place. *See Montejo,* 566 U.S. at 787 (describing bright-line anti-badgering rule under *Edwards v. Arizona,* 451 U.S. 477, 483 (1981) (extending bright-line prophylactic aspect of *Miranda* to circumstances where an accused has expressed his desire for counsel, then he may not be subjected to further interrogation until counsel has been made available to him unless the accused himself initiates further communications with police). The Government violated the Sixth Amendment by approaching Heraclio before such counsel was made available to him.

The Court bases its finding on the facts of this case. The Government knew that Heraclio had been indicted and his Sixth Amendment right to counsel to assist in his defense had attached and that he had invoked that right. When Pimentel told agents that he knew nothing about the criminal case, he was not even the extradition attorney, who was Jonathan Toledo, and he had not even seen the extradition file, (Heraclio Interview

(Doc. 772-4) at 4), Pimentel was told that it didn't matter because he could represent Heraclio for the purpose of the interview *id.*. The agents were wrong. The subsequent reading of the international notice of rights, *id.* at 8-9, and Herclio's consent to questioning did not cure the 6th Amendment violation. Here, no interrogation should have taken place.

The Court notes that approximately six months later, December 2017, the Government was faced with a similar constitutional concern when it sought to depose Rito Osorio-Arellanes as a material witness without violating Heraclio's Sixth Amendment right under the confrontation clause. Then, they sought appointment of counsel in this case, Frank Leon, to provide Heraclio with assistance of counsel for his defense. The Government should have acted similarly here. It did not, and thereby violated the Sixth Amendment which guarantees: "In all criminal prosecutions, the accused shall enjoy the right to . . . to have the assistance of counsel for his defense."

**Accordingly,**

**IT IS ORDERED** that the Motion to Preclude Videotape Deposition of Rito (Doc. 764) is MOOT because the Government does not intend to use it.

**IT IS FURTHER ORDERED** that the Motion to Suppress Statements and Evidence for Fifth Amendment Violation (Doc. 762) is DENIED.

**IT IS FURTHER ORDERED** that the Motion to Suppress Statements and Evidence for Sixth Amendment Violation (Doc. 763) is GRANTED.

Dated this 29th day of January, 2019.

_____
Honorable David C. Bury
United States District Judge